UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| ADAM BRADY; and<br>EMMA BRADY,<br><br>    Plaintiffs,<br><br>vs.<br><br>ANEL DIAZ,<br><br>    Defendant.<br>_____ | Case No.<br><br>**COMPLAINT FOR<br>DAMAGES**<br><br>**JURY TRIAL DEMANDED<br>[F.R.C.P., Rule 38]** |

Plaintiffs complain against Defendant and allege:

<u>PARTIES</u>

1.      Plaintiffs, Adam Brady and Emma Brady [collectively, "the Bradys"], are individuals who reside in Denver, Colorado.

2.      Defendant, Anel Diaz ["Diaz"], is an individual who resides in Atlanta, Georgia.

<u>JURISDICTION AND VENUE</u>

3.      This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332(a), in that there exists complete diversity of citizenship

of the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4.     This Court has personal jurisdiction over Diaz pursuant to Federal Rules of Civil Procedure, Rule 4(e), in that Diaz resides within this judicial district.

5.     The present action is properly venued in this Court pursuant to 28 U.S.C. § 1391(b)(1), (c)(1), in that Diaz resides within this judicial district, and pursuant to 28 U.S.C. § 1391(b)(2), in that the wrongs of Diaz complained of in this action occurred within this judicial district.

6.     All conditions precedent have been complied with or have otherwise been waived.

## GENERAL ALLEGATIONS

7.     At all times relevant to this Complaint, Diaz held himself out as an expert futures trader and investment advisor with a track record of having made millions of dollars, for himself and for those who followed his trading recommendations, trading in futures markets.

8.     In or about June, 2019, Diaz solicited the Bradys to place $500,000 into a futures trading account on or from which:  (a) all trades would either be made by Diaz himself or would be made by Bradys' agent, Simon Brady, in strict accordance

with the recommendations of Diaz; and (b) all trading-derived profits would be divided equally between the Bradys and Diaz.

9.      In order to induce the Bradys to enter into that arrangement, Diaz repeatedly represented to the Bradys, both orally and in writing, that he always made money in futures trading, and repeatedly promised the Bradys, both orally and in writing, that in the highly unlikely event the account suffered a loss he would reimburse the Bradys for the entire amount of that loss.

10.      Also in order to induce the Bradys to enter into that arrangement, Diaz repeatedly promised, both orally and in writing, that the Bradys could withdraw their principal, or otherwise suspend trading on the account, at any time without penalty, without thereby relieving the parties of their duty to evenly share any profits that had been made, and without thereby relieving Diaz of his duty to reimburse the Bradys for any losses they might have suffered.

11.      In reasonable reliance on those representations and those promises, the Bradys agreed to the abovementioned arrangement proposed by Diaz and, on or about July 22, 2019, following Diaz's instructions, placed $500,000 into a futures trading account hosted by the online platform Ninja Trader [the "Account"].

12.     Thereafter, all trades on the Account were either done by Diaz or were done by Brady's agent, Simon Brady, in strict accordance with the recommendations of Diaz.

13.     By the end of December, 2019, the balance of funds in the Account had dropped to $367,000. The Bradys suspended any further trading on the Account and demanded that Diaz, as promised, reimburse them for the $133,000 they had lost.

14.     Diaz at first responded to that demand by saying that he would reimburse the $133,000 within a week. He failed to do so.

15.      During the period from January, 2020 through June, 2020, Diaz repeatedly represented that the $133,000 reimbursement would be forthcoming shortly.

16.     Diaz never reimbursed the Bradys for the $133,000 they had lost. After June 25, 2020, Diaz began to take the position that had no obligation or intention to do so.

<u>FIRST COUNT</u>

(Breach of Oral Contract)

17.     The Bradys refer to, and by that reference incorporate and reassert in the present count, each of the allegations contained in paragraphs 1 through 16 of this Complaint.

4

18.    In or about June, 2019, the Bradys and Diaz entered into an oral agreement on the following terms:

(a)    The Bradys were required to place $500,000 into a futures trading account [the "Account"] on or from which: (1) all trades would either be made by Diaz himself or would be made by Brady's agent, Simon Brady, in strict accordance with the recommendations of Diaz; and (2) all trading-derived profits would be divided equally between the Bradys and Diaz.

(b)    In the event that the Account suffered a loss, Diaz was required to reimburse the Bradys for the entire amount of that loss.

(c)    The Bradys could withdraw their principal, or otherwise suspend trading on the Account, at any time without penalty, without relieving the parties of their duty to evenly share any profits that might have been made, and without relieving Diaz of his duty to reimburse the Bradys for any losses they might have suffered.

19.    The Bradys did everything they were required to do under the terms of that agreement.

20.    Around and after the end of December, 2019, Diaz breached that agreement, as follows:

(a)     By the end of December, 2019, the balance of funds in the Account had dropped to $367,000.

(b)     The Bradys suspended trading on the Account and demanded that Diaz, as promised, reimburse them for the $133,000 they had lost.

(c)     Diaz failed and refused, and continues to fail and refuse, to provide that reimbursement.

21.     As a proximate result of that breach, the Bradys have suffered damages in an amount subject to proof at trial but in any event greater than $133,000.

WHEREFORE, the Bradys pray judgment as set forth below.

<u>SECOND COUNT</u>

(Promissory Fraud)

22.     The Bradys refer to, and by that reference incorporate and reassert in the present count, each of the allegations contained in paragraphs 1 through 16 of this Complaint.

23.     In or about June, 2019, Diaz repeatedly represented to the Bradys, both orally and in writing, that in the event that the Account suffered a loss he would reimburse the Bradys for the entire amount of that loss.

24.    Those representations were false and were known by Diaz to be false at the time they were made, in that Diaz never intended to reimburse the Bradys for any such losses.

25.    Those representations were made in order to deceive the Bradys and to induce the Bradys to enter into the arrangement described in paragraph 8 of this Complaint, thereby giving Diaz the opportunity to engage in futures trading for personal profit using solely the Bradys' money.

26.    The Bradys believed those representations and in reasonable reliance thereon place $500,000 into the Account, on or from which all trades were either made by Diaz himself or were made by Brady's agent, Simon Brady, in strict accordance with the recommendations of Diaz. But for that belief and that reasonable reliance, the Bradys would not have done so.

27.    The Bradys did not discover, and in the exercise of due care could not have discovered, that those representations were false until in or about December, 2019 and thereafter, at which time, despite the Bradys' demand therefor, Diaz failed and refused, and denied that he had any obligation, to reimburse the Bradys for the $130,000 they had lost on the Account.

28.     As a proximate result of the abovementioned wrongful acts by Diaz, the Bradys have suffered damages in an amount subject to proof at trial but in any event greater than $130,000.

29.     The abovementioned wrongful acts by Diaz were carried out with fraud, malice, and a reckless disregard for the rights of the Bradys.  The Bradys are therefore entitled to an award of punitive damages against Diaz in an amount sufficient to punish Diaz and to deter Diaz from committing similar wrongful acts in the future.

WHEREFORE, the Bradys pray judgment as follows:

<u>PRAYER</u>

1.     For damages in an amount subject to proof at trial but in any event greater than $133,000;

2.     For punitive damages in an amount sufficient to punish Diaz and to deter Diaz from committing similar wrongful acts in the future;

3.     For the Bradys' reasonable costs of suit incurred herein; and

4.     For such other relief as the Court may deem proper.

This 29th day of November, 2021.

DERMER APPEL RUDER
STEPHEN DERMER [Georgia SBN  219267]
708 Holcomb Bridge Rd.
Norcross, Georgia 30071
Telephone:  (404) 892-3542
Facsimile:   (404) 892-8886
sdermer@darlawllc.com


/s/      Stephen Dermer
Stephen Dermer

HENNEFER FINLEY & WOOD, LLP
JOSEPH WOOD [California SBN 103596]
235 Montgomery Street, Suite 3000
San Francisco, California  94104
Telephone:  (415) 421-6100
jwood@hennefer-wood.com
jhcwlaw@yahoo.com


/s/ Joseph Wood
Joseph Wood

**Attorneys for Plaintiffs, Adam Brady and Emma Brady**

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure, Rule 38, plaintiffs, Adam

Brady and Emma Brady, hereby demand trial by jury in this action on all issues so

triable.

This 29th day of November, 2021.

> DERMER APPEL RUDER
> STEPHEN DERMER [Georgia SBN  219267]
> 708 Holcomb Bridge Rd.
> Norcross, Georgia 30071
> Telephone:  (404) 892-3542
> Facsimile:   (404) 892-8886
> sdermer@darlawllc.com
>
> /s/      Stephen Dermer
> Stephen Dermer
>
> HENNEFER FINLEY & WOOD, LLP
> JOSEPH WOOD [California SBN 103596]
> 235 Montgomery Street, Suite 3000
> San Francisco, California  94104
> Telephone:  (415) 421-6100
> jwood@hennefer-wood.com
> jhcwlaw@yahoo.com
>
> /s/ Joseph Wood
> Joseph Wood
>
> **Attorneys for Plaintiffs, Adam Brady and**
> **Emma Brady**